# IN THE COURT OF APPEALS OF IOWA

No. 22-1149
Filed October 5, 2022

**IN THE INTEREST OF L.J.-K,**
**Minor Child,**

**J.J., Mother,**
  **Appellant.**
_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District Associate Judge.

A mother appeals the termination of her parental rights to a child born in 2009. **AFFIRMED.**

Karen A. Taylor of Taylor Law Offices, P.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Kayla A.J. Stratton of the Des Moines Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to a child born in 2009. She (1) challenges the evidence supporting the grounds for termination cited by the district court, including the efforts made by the department of health and human services to facilitate reunification; (2) argues termination was not in the child's best interests; and (3) contends the court should have granted an exception to termination based on "a close bond" with family members.

The district court terminated the mother's parental rights pursuant to two statutory provisions. We may affirm if we find clear and convincing evidence to support either ground. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We elect to focus on Iowa Code section 232.116(1)(f) (2021), which requires proof of several elements, including proof the children could not be returned to parental custody. "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

When the child was ten years old, the department received a complaint that the mother took unprescribed controlled substances. The department issued a founded assessment and initiated services for the family but did not seek court involvement.

The following year, the department received another complaint that the mother relapsed on methamphetamine and failed to properly supervise her child. The department issued a second founded assessment. The mother consented to the child's removal and her placement with an adult sibling, under department

supervision. The district court approved the removal and later adjudicated the child in need of assistance.

Shortly thereafter, the department applied to change the child's placement, citing the sibling's belief that the child needed more care than she could offer and citing the child's mental health and medication management needs. The district court granted the application and transferred custody to the department. The child was placed in foster care, then institutional settings, and finally foster care again.

The mother sought transportation assistance to attend visits with the child. The district court ordered the department to provide bus passes or gas cards. In a subsequent order, the court noted that the "[t]he department provided transportation . . . and gas cards," yet the mother was "content with a distant relationship."

At the termination hearing, the department's social worker case manager described the mother's "history of substance abuse" and her attempts at treatment. She was admitted to an inpatient program the previous year but left in "a little over a month," against the advice of the facility. The facility was authorized to allow placement of the child with her and provided programming for substance abuse and mental health needs, both of which the mother acknowledged she had. The mother was admitted to another residential treatment program but again left after about two weeks. While she successfully completed a third, month-long residential program and went to aftercare, the case manager testified she "struggled with her attendance" and there were concerns the facility would have to "discharge her from the [aftercare] program."

The case manager recommended termination of parental rights. She noted the child had been out of her mother's care for "[q]uite a bit of" her life and the child felt she had been the parent in the relationship. She expressed concern that, if the child were returned to her mother's care, "the cycle [would] continue," the department would "be involved again," and the child's "mental health . . . would go backwards." Termination, she said, would allow the child "to focus on her own mental health."

The mother acknowledged she could not have the child returned immediately. She explained that she had yet to obtain housing and she "[p]ossibly" needed to demonstrate a longer period of sobriety before the child could be returned. On our de novo review, we agree with the district court that the State made reasonable efforts to reunite mother and child and proved the child could not be returned to parental care under Iowa Code section 232.116(1)(f).

Termination must also be in the child's best interests. *See* Iowa Code § 232.116(2). While the mother correctly points out that the thirteen-year-old child had "a very established relationship with her [grand]mother and older siblings," the documented "cycle" of department involvement described by the case manager is sufficient to conclude termination was in the child's best interests.

We are left with the mother's contention that the district court should have granted an exception to termination based on the parent-child bond. *See id.* § 232.117(3)(c). The mother testified the child was her life and she had "a very strong bond with" her, as did the child's sisters. But the bond frayed with the child's multiple moves over a period of two and a half years. As the case manager stated, the child required structure and a stable home. The mother was not in a position

to provide either. We conclude the court appropriately declined to invoke this exception to termination, and we affirm the order terminating the mother's parental rights to the child.

**AFFIRMED.**